## EX PARTE JUANITA SUE DEWEES.

No. A-1561. Decided April 7, 1948.
Rehearing overruled May 5, 1948.
(210 S. W., 2d Series, 145.)

*W. F. Nix* and *Morgan, Coulton, Morgan & Britain,* all of Amarillo, for relator.

*Hazlewood & Richards* and *John Hazlewood,* of Amarillo, for complainant.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

In this original proceeding the relator, Mrs. Juanita Sue DeWees, seeks to be discharged from an order of the District Court of Oldham County committing her to jail for contempt. We heretofore ordered her release on bond temporarily, since which time the case has been argued and is now before us for final disposition. The material facts leading up to the order of commitment are:

In December, 1946, R. C. Valentine, Jr., was awarded a divorce from his wife, Juanita Sue Valentine, by the District Court of Oldham County, and was also awarded the care, custody, and control of their infant child, Billye Sue Valentine, a girl about two years of age. Mrs. Stella Glasscock, the mother by adoption of Mrs. Valentine, intervened in the suit, seeking an award of the custody of the child, but the prayer of her intervention was denied. From that judgment Mrs. Valentine and Mrs. Glasscok perfected an appeal to the Court of Civil Appeals at Amarillo, which court, after a hearing, affirmed the judgment of the trial court. Mandate was issued from the Court of Civil Appeals in July, 1947, and was forthwith filed in the office of the District Clerk of Oldham County. A writ of execution was issued out of the district court in January, 1948, commanding the Sheriff of Oldham County to seize the infant wherever found and deliver her to her father, R. C. Valentine, Jr. This writ was returned by the sheriff unexecuted because the whereabouts of the child was unknown to him. After the Valentines were divorced, Juanita Sue Valentine married Jack DeWees, and is still his wife. The child was in the possession of its mother and grandmother, Mrs. Stella Glasscock, at the time the divorce suit was originally filed, and has remained ever since in the possession of one or both of them.

Sometime prior to July 30, 1947, Mrs. Glasscock moved to

Craig County, Oklahoma, taking the child with her. On the date last mentioned she filed in the district court of that county an application for a writ of habeas corpus alleging that she had the lawful custody of the child, naming R. C. Valentine, Jr., as respondent, and praying that custody of the child be awarded to her. A writ was issued in that cause and served on Mr. Valentine in Texas, but he ignored it and made no appearance in the case. The mother of the child, Juanita Sue DeWees, filed in the same cause an application for a writ of habeas corpus claiming the right to share in the custody of the child, and naming her former husband and Mrs. Stella Glasscock as respondents. Service on this application was had in the same manner upon Mr. Valentine, but he ignored it also. Thereafter, on September 24, 1947, a final judgment was rendered in the Oklahoma court awarding the custody of the child to Mrs. Glasscock and Mrs. DeWees jointly upon a finding of changed conditions, and expressly decreeing that she not be removed from the jurisdiction of that court until further orders of the court.

Thereafter, on December 6, 1947, Valentine filed an affidavit in the original cause in the District Court of Oldham County alleging that his former wife, relator herein, had knowingly and willfully secreted the child or otherwise put her beyond the reach of law, as a result of which he had been unable to obtain possession of her, and praying that Mrs. DeWees be cited to show cause and that upon hearing she be adjudged in contempt of court. Upon a hearing of the contempt matter on January 2, 1948, the court took the case under advisement, and on January 14 thereafter entered an order adjudging the relator guilty of contempt by willfully disobeying the court's judgment of December 19, 1946, which awarded the custody of the child to its father; by willfully obstructing and hindering the service of a writ of execution; and by willfully and constantly refusing to give physical possession of the child to its father. The penalty prescribed by the court was:

"And the court does further consider, adjudge, order and direct that the said respondent and contemner, Juanita Sue DeWees, be imprisoned in the jail of Oldham County, Texas, until the child, Billye Sue Valentine, is delivered into the physical possession of R. C. Valentine, Jr., in the 69th Judicial District courtroom, located in the courthouse of Oldham County, Texas, in Vega, Texas."

The parties devote much space in their brief to a discus-

sion of the question of whether full faith and credit should be given the Oklahoma judgment under Article IV, Section 1, of the Federal Constitution. However, the view we take of the case makes consideration of this question unnecessary.

■ We assume that for the acts which she committed the court had the power to adjudge relator to be in contempt of court and to assess a penalty against her on that account. But the question to which our inquiry is directed is whether or not the court had the power to assess the particular punishment prescribed in its order. Neither a fine nor imprisonment for a definite term was assessed against relator, but the decree was that she be imprisoned until her child be delivered into the physical possession of R. C. Valentine, Jr., in the courthouse at Vega, Texas. The order does not contemplate that she herself will deliver the child into the possession of Mr. Valentine, evidently recognizing that she could not do so while confined in jail, but it directs that she be imprisoned until the child "is delivered." Presumably, it was thought that imprisonment of relator would cause Mrs. Glasscock to redeem her by delivering the child in accordance with the decree.

■ Mrs. Glasscock and the relator were both parties to the suit in Oklahoma, and for them, or either of them, to remove or conspire to have the child removed from the jurisdiction of the Oklahoma court would subject them to punishment for contempt of that court. The decree in this case presents the anomalous situation of a district court in Texas assessing the penalty of imprisonment in a contempt proceeding, and providing in its decree that the only method by which the contemner can be purged of the contempt is by the commission of a contempt against a district court in Oklahoma.

■ To order that one be imprisoned for an indefinite period in a civil contempt is purely a remedial measure. Its purpose is to coerce the contemner to do an act within his or her power to perform. He must have the means by which he may purge himself of the contempt. Ex parte Carroll, 141 Texas 566, 175 S. W. (2d) 251; State v. District Court, 58 Mont. 355, 192 Pac. 829; In re Burns, 83 Mont. 200, 271 Pac. 439; Ex parte Silvia, 123 Cal. 293, 55 Pac. 988, 60 Am. St. Rep. 58; Brown v. Brown, 205 Ind. 664, 187 N. E. 836. The theory is well expressed in the case of Staley v. South Jersey Realty Co., 83 N. J. Eq. 300, 90 Atl. 1042, 1043, L. R. A. 1917B, 113, Ann. Cas. 1916B, 955, in this language:

"In a 'civil contempt' the proceeding is remedial, it is a step in the cause the object of which is to coerce one party for the benefit of the other party to do or to refrain from doing some act specified in the order of the court. Hence, if imprisonment be ordered, it is remedial in purpose and coercive in character, and to that end must relate to something to be done by the defendant by the doing of which he may discharge himself. As quaintly expressed, the imprisoned man 'carries the keys to his prison in his own pocket.'"

The same theory is expressed by the Supreme Court of Kansas in Davison v. Davison, 125 Kan. 807, 266 Pac. 650, 654, in this language:

"It need hardly be repeated that courts * * * may send recalcitrants to jail until such proper orders are complied with, but that elementary doctrine implies that the court's orders can be obeyed. Since the sheriff has seized the automobile and the money is gone, the incarceration of this hapless petitioner until she surrenders the car and produces the money is tantamount to life imprisonment, and therefore void. U. S. Const. Fourteenth Amendment."

■ Where it is not within the power of a person to perform the act which alone will purge him of contempt, the court is without power to imprison him for an indefinite term as punishment for an offense already committed. The effect of a denial of relief in this proceeding would be to authorize the trial court to confine this woman in jail for the balance of her natural life. If it be urged that her mother by adoption would come to her rescue, it is a sufficient answer to say that it cannot be determined that she would do so. Our concern is not what will certainly happen if relief is denied, but what could happen. Obviously, the thing that could happen is the lifetime imprisonment of relator, and a denial of relief would be a recognition by this court of the power of the trial judge to enter an order having that effect.

We give full recognition to the rule that an alleged contemner who has voluntarily and contemptuously brought upon himself the disability to obey a decree of court cannot avail himself of the plea of inability to perform as a defense to a charge of contempt. Such contemner may be punished for contempt, notwithstanding his inability at the time of the contempt decree to perform, but the limit of such punishment is by fine not exceeding $100.00 and by imprisonment not exceeding three days, as provided in R. S. Article 1911. We do

not hold that the court in the instant case could not assess that penalty against relator, but we do hold that the court exceeded its power in entering the particular decree on which the order of commitment was issued.

The relator is discharged.

Opinion delivered April 7, 1948.

Rehearing overruled May 5, 1948.