**Ex parte Maurice WERBLUD.**

**No. B–5639.**

Supreme Court of Texas.

April 14, 1976.

As Corrected on Denial of Rehearing
June 9, 1976.

Dunnam, Dunnam & Dunnam, W. V. Dunnam, Jr., Waco, for relator.

John L. Hill, Atty. Gen., Bernard D. Newsom, Asst. Atty. Gen., Austin, for respondent.

POPE, Justice.

Maurice Werblud applied for writ of habeas corpus to obtain his release from custody for his failure to pay two fines, each in the sum of $500 for violations of a temporary injunction committed on different days. On July 28, 1975, the 54th Judicial District Court temporarily enjoined Werblud from operating his rendering plant, Texas Pet Foods, Inc., in certain designated ways because it was emitting noxious odors in violation of the Texas Clean Air Act, Tex.Rev.Civ.Stat.Ann. art. 4477–5 (pamp. supp. 1974), and the Renderers' Licensing Act, Tex.Rev.Civ.Stat.Ann. art. 4477–6 (pamp. supp. 1974). Werblud appealed the injunction and after the court of civil appeals acquired jurisdiction of the case, the State instituted contempt proceedings based on several alleged violations of the injunction. The court of civil appeals conducted a factual hearing and then ordered that "Maurice Werblud shall be, and is hereby, punished by a fine of $500.00 for each of said two days of contemptuous acts . . .." Werblud refused to pay the fines and therefore was taken into custody by the Sheriff. Werblud asserts that he should be released because: (1) the injunction was so broad and indefinite that he did not have notice of the acts prohibited, (2) he was denied a trial by jury, and (3) he was forced to testify against himself. We agree with the third contention and grant the writ.

It is well settled that a court of civil appeals may exercise contempt powers when the contempt proceeding is instituted after the jurisdiction of the appellate court has attached. *Ex parte Duncan*, 127 Tex. 507, 95 S.W.2d 675 (1936); *Ex parte Travis*, 123 Tex. 480, 73 S.W.2d 487 (1934); *Musick v. Hunt*, 364 S.W.2d 252 (Tex.Civ.App.—Houston 1963); *International Ladies' Garment Workers' Local Union No. 123 v. Dorothy Frocks Co.*, 97 S.W.2d 379 (Tex.Civ.App.—San Antonio 1936). As this court stated in *Ex parte Travis, supra* at 489:

After the jurisdiction of the Appellate Court attached, it alone was clothed with the power to adjudicate the validity or invalidity of the temporary injunction and to exercise the discretion involved in compelling obedience to the injunction pending appeal.

When the proof of an alleged contempt requires a factual hearing, in some instances the court of civil appeals has conducted its own hearing. That was the procedure employed by the court of civil appeals in *Ex parte Duncan, supra*. The acts of contempt which were alleged in *International Ladies' G. W. Union No. 123 v. Dorothy Frocks Co., supra*, involved a rather extensive hearing about a number of separate acts of contempt and a number of persons. The court of civil appeals in that instance, while retaining jurisdiction of the contempt matter, referred the matter of taking testimony and hearing evidence to the judge of a District Court. The transcript of the evidence was then forwarded

to the court of civil appeals. Either of those procedures is an appropriate one, though this court considers referral to the district court preferable in the ordinary case. When a jury is required to determine factual issues, the court of civil appeals should retain jurisdiction of the contempt hearing and is required to refer the factual hearing to a trial court. The trial court may then try the disputed facts before a jury and transmit the findings to the appellate court. There is no contention made in this court that the court of civil appeals lacked jurisdiction to entertain the contempt charge. Under the authorities mentioned above, that contention would be without merit.

■ The order which Werblud was charged with violating was not overbroad nor subject to the deficiency of uncertainty. Attached to the order were eighteen xeroxed pages of the Texas Clean Air Act and the Renderers' Licensing Act, but the order went on to specify the acts which were prohibited. The judgment of contempt made findings that Werblud had violated several of those specifications in the injunction order.[1] The injunction met the test of certainty required by *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967).

### The Right to a Jury Trial in the Contempt Hearing

Werblud also says that his constitutional rights were violated by the court's denial of his request for a jury trial. He relies upon Articles V, VI, and XIV of the United States Constitution, as well as Article I, Sections 10 and 15, and Article V, Section 10, of the Texas Constitution. To determine Werblud's right to jury trial, we must first decide whether the contempt for which Werblud was charged was civil or criminal, whether it was direct or constructive, and whether it was petty or serious.

■ The purpose of civil contempt is remedial and coercive in nature. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey some order of the court where such obedience will benefit an opposing litigant. Imprisonment is conditional upon obedience and therefore the civil contemnor "carries the keys of [his] prison in [his] own pocket." *Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966); *Gompers v. Buck Stove & R. Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1910). In other words, it is civil contempt when one "may procure his release by compliance with the provisions of the order of the court." *Ex parte Hosken*, 480 S.W.2d 18 (Tex.Civ.App.—Beaumont 1972). This is the settled rule in Texas. *Ex parte DeWees*, 146 Tex. 564, 210 S.W.2d 145, 147 (1948).

■ Criminal contempt on the other hand is punitive in nature. The sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act which affronted the dignity and authority of the court. *Shillitani v. United States, supra*; Beale, *Contempt of Court Criminal & Civil*, 21 Harv.L.Rev. 161 (1908); Magee, *Contempt of Court in Texas*, 14 S.Tex.L.J. 278 (1973). 17 Am.Jur.2d, *Contempt* § 4 (1964). This rule was well expressed in *Ex parte Hosken* at 23:

> Where the primary purpose of the proceeding is to vindicate public authority,

---

1. "(2) by failing to repair all holes in the rendering plant structure and completely seal the entire building to prevent the emission of fugitive odors; (3) by failing to seal all product handling systems used in the transfer and processing of by-product materials to assure same are leak and spill-proof; (4) by failing to vent condensor and hot well exhaust gases, vapors and odors directly to the defendant's venturi scrubber; (5) by failing to remove all raw and processed poultry materials from rendering plant floors, walls, and equipment and thoroughly steam same prior to start-up operations and on a daily basis thereafter; (6) by failing to level to the ridge-and-furrow system ditches so as to prevent standing water and assure adequate irrigation of ridge-and-furrow vegetation; (7) by failing to develop, reduce to writing, post in a noticeable plant location, and insist upon employees following, a regular daily cleaning procedure; and (8) by failing to operate all odor abatement and waste-water treatment equipment according to the manufacturer's specifications;"

the proceeding is usually denominated criminal. The action is punitive in nature. *Nye v. United States,* 313 U.S. 33, 43, 61 S.Ct. 810, 85 L.Ed. 1172, (1941); *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Ordinarily, the punishment is fixed and definite and no subsequent voluntary compliance on the part of the defendant can enable him to avoid punishment for his past acts.

The affidavit of contempt filed by the State prayed that:

> Texas Pet Foods, Inc., and Maurice Werblud, its owner, operator and principal corporate officer, be held in *and punished for contempt of this court* ; that Maurice Werblud, as owner, operator and principal officer of the Defendant corporation be fined and imprisoned for such reasonable length of time commensurate with the gravity and seriousness of each act of contemptuous conduct alleged in this Affidavit . . .. [Emphasis added.]

The court of civil appeals made clear that its purpose in imposing the two fines upon Werblud was to punish him. The punishment was for completed acts of contempt and was not made conditional upon future compliance by Werblud. As the United States Supreme Court said in *Gompers v. Buck Stove & R. Co., supra,* and repeated in *Shillitani v. United States, supra* 384 U.S. at 369, 86 S.Ct. at 1535, "It is not the fact of punishment but rather its character and purpose that often serves to distinguish civil from criminal contempt. The test may be what does the court primarily seek to accomplish by imposing sentence?" In this instance the answer to that test is punishment.

■ A contempt may also be classified as either direct or constructive. A direct contempt occurs within the presence of the court; while a constructive, or indirect, contempt occurs outside the presence of the court. *Ex parte Ratliff,* 117 Tex. 325, 3 S.W.2d 406 (1928); *Magee, supra* at 281. This distinction has more significance than merely identifying the physical location of

the contemptuous act, since more procedural safeguards have been afforded to constructive contemnors than to direct contemnors. *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *Ex parte Hill,* 122 Tex. 80, 52 S.W.2d 367 (1932); Odom & Baker, *Direct & Constructive Contempt,* 26 Baylor L.Rev. 147 (1974). Note, *Mayberry v. Pennsylvania: Due Process Limitation in Summary Punishments for Contempt of Court,* 25 Sw.L.J. 805 (1971). The charge against Werblud was, of course, that of a constructive contempt. We have then, a constructive criminal contempt which is charged against one who is tried by judges other than the one who pronounced the original order.

■ One's right to a jury, however, depends upon still another test, whether the offense may be classified as petty or serious. The distinction was noticed in the recent decision of the Supreme Court in *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975). Although that case arose in the Federal court, the jury trial requirements of the Sixth Amendment to the United States Constitution apply with equal force to State prosecutions for contempt. *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). *Muniz* summarized the distinctions and from that case we extract these rules:

(1) Like other minor crimes, "petty" contempts may be tried without a jury, but contemnors in serious contempt cases in the federal system have a Sixth Amendment right to jury trial;

(2) criminal contempt, in and of itself and without regard for the punishment imposed, is not a serious offense absent legislative declaration to the contrary;

(3) lacking legislative authorization of more serious punishment, a sentence of as much as six months in prison, plus normal periods of probation may be imposed without a jury trial;

(4) but imprisonment for longer than six months is constitutionally impermissible unless the contemnor has been given the opportunity for a jury trial.

Cases of criminal contempt, where the sentence actually imposed does not exceed six months imprisonment, are exempted from the requirements of a jury trial. *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). This exemption is based upon the historical interpretation of the Sixth Amendment that "petty offenses" were tried without juries in both England and the colonies and that the framers of the Constitution did not intend the Sixth Amendment jury trial rights to be more comprehensive than the established common law practice. *Duncan v. Louisiana, supra*; Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury*, 39 Harv.L.Rev. 917 (1926). Six months imprisonment and/or a $500 fine has been chosen as a somewhat arbitrary line for distinguishing petty offenses from serious offenses, although this does coincide with the statutory definition of a petty offense in Federal criminal law. 18 U.S.C.A. § 1(3).

 Texas is in accord with these distinctions between petty and serious offenses. The statute which authorizes punishment for criminal contempt allows punishment by "a fine of not more than $500, or by confinement in the county jail for not more than six months, or both." Tex.Rev. Stat.Ann. art. 1911a, § 2 (Supp.1975). The authorization of punishment falls within the definition of petty offenses as set forth by the United States Supreme Court. *Muniz v. Hoffman, supra; Duncan v. Louisiana, supra; Bloom v. Illinois, supra.* Furthermore, the legislative history of the Texas contempt statute reveals that it was the drafter's intent to keep punishment within the petty offense category. Greenhill, *Proposed New Statute on Contempt*, 33 Tex.Bar J. 970 (1970). The fact that two $500 fines were imposed upon Werblud does not take this case out of the petty offense category. These fines constituted punishment for two separate acts of constructive contempt committed on separate dates. *Ex parte Genecov*, 143 Tex. 476, 186 S.W.2d 225 (1945). Even if the fine was considered as being for a single offense, the United States Supreme Court in *Muniz v. Hoffman, supra* 422 U.S. at 476, 95 S.Ct. at 2190, held that a fine which exceeds $500 does not in and of itself necessitate the use of a jury.

[W]e cannot accept the proposition that a contempt must be considered a serious crime under all circumstances where the punishment is a fine of more than $500, unaccompanied by imprisonment. It is one thing to hold that deprivation of an individual's liberty beyond a six-month term should not be imposed without the protections of a jury trial, but it is quite another to suggest that, regardless of the circumstances, a jury is required where any fine greater than $500 is contemplated. From the standpoint of determining the seriousness of the risk and the extent of the possible deprivation faced by a contemnor, imprisonment and fines are intrinsically different.

We hold that under the facts of this case the court of civil appeals was not required to provide a jury trial for Werblud in a case of constructive criminal contempt when two separate $500 fines were imposed.

### *Privilege Against Self-Incrimination*

 The state called Werblud as its first witness and Werblud's attorney objected to this procedure on the grounds that it violated his client's privilege against self-incrimination. The court of civil appeals overruled the objection and Werblud was questioned extensively by the state concerning his knowledge of and control over the rendering plant operations. Many constitutional rights are accorded criminal contemnors, including the privilege against self-incrimination. *See* Goldfarb, *The Constitution & Contempt of Court*, 61 Mich.L.R. 283 (1962). *See also, Gompers v. Buck Stove & R. Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); *United States v. Temple*, 349 F.2d 116 (4th Cir. 1965); *Killpatrick v. Superior Court*, 153 Cal.App.2d 146, 314 P.2d 164 (1957); Goldfarb, *supra* at 320;

Merrick, *The Privilege of Self-Incrimination as to Charges of Contempt*, 14 Ill.L. Rev. 181 (1911); 8 Wigmore, Evidence § 2257 (McNaughton rev. 1961).

The state's argument is that the privilege was not invoked because Werblud's attorney could not legally claim the privilege for his client. Numerous cases are cited for the proposition that the privilege against self-incrimination is personal to a witness and must be claimed by the witness himself. *Meyer v. Tunks*, 360 S.W.2d 518 (Tex.1962); *Ingersol v. McWillie*, 87 Tex. 647, 30 S.W. 869 (Tex.1895); *Ex parte Miers*, 124 Tex. Cr.R. 592, 64 S.W.2d 778 (1933); *Bybee v. State*, 74 Tex.Cr.R. 211, 168 S.W. 526 (1914); *Owen v. State*, 7 Tex.Cr.R. 329 (1879).

We hold that Werblud properly claimed his privilege against self-incrimination. The cases relied upon by the state are situations in which an ordinary witness claims his privilege against self-incrimination. Under those circumstances the privilege merely grants the witness an option of refusal to answer; it does not prohibit inquiry and the witness cannot refuse to take the stand. McCormick & Ray, Texas Law of Evidence § 432 (1956); 8 Wigmore, Evidence § 2268 (McNaughton rev. 1961). Thus where a party to a civil suit or a non-party witness in either a civil or criminal action is on the stand and being examined, it has been held that an attorney cannot interrupt the questioning and interpose the privilege in behalf of the witness. The questions may be asked and the witness must personally claim his privilege to each question. McCormick & Ray, Texas Law of Evidence § 432 (1956).

The privilege against self-incrimination grants a broader exemption from inquiry to an accused in a criminal case than to an ordinary witness.

In the case of an ordinary witness the question may be asked. He may then decide whether he will exercise the privilege. But to avail himself of the privilege he must make a claim. *On the other hand, the defendant in a criminal case has the privilege of refusing to give any testimony in the case.* It would seem, even so, that the prosecution might call him as a witness for they cannot know whether he will claim his privilege. Such, however is not the rule. Rather it is universally held that the defendant may refuse to be sworn at all. McCormick & Ray, Texas Law of Evidence § 432 (1956). [Emphasis added.]

As the United States Supreme Court stated in *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968):

Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. In the words of Mr. Justice Holmes: "These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the fundamental characteristic of crimes as that word has been understood in English speech." *Gompers v. United States*, 233 U.S. 604, 34 S.Ct. 693, 58 L.Ed. 1115 (1914).

Werblud was charged with criminal contempt and his attorney correctly asserted his client's privilege against self-incrimination as a reason that he should not have been sworn and compelled to testify at all.

The relator is discharged from custody.

Dissenting opinion by REAVLEY, J., in which GREENHILL, C. J., and STEAKLEY and SAM D. JOHNSON, JJ., join.

REAVLEY, Justice (dissenting).

The extent to which the Fifth Amendment privilege applies in contempt proceedings has not been resolved. I would go no further in the expansion of the privilege than required by the United States Supreme Court. The question in the instant case is not whether the alleged contemnor is entitled to decline to answer specific questions upon the ground of possible incrimination. That contention was never made by relator or by his attorney. Relator took the oath of a witness. He was then called to the stand as an adverse witness. When he was asked to state his name, his attorney objected to his being *called as a*

*witness* because it would violate his privilege against self incrimination. The objection was overruled and no further objection was made on grounds of self incrimination as relator proceeded to answer the questions of both attorneys through 91 pages of the statement of facts.

The right not to be called as a witness has been accorded only to the defendant in the course of a criminal case. Then is the present proceeding a "criminal case?" The hearing was held by the Court of Civil Appeals, and the habeas corpus has come here to the Supreme Court rather than to the Court of Criminal Appeals. We hold that the alleged contemnor was not entitled to a jury. Even if some privileges must be accorded because of the potential fine which may be assessed, our specific question is not accurately resolved by labeling the proceeding a "criminal case." We should decide which aspects of a criminal proceeding must apply.

In *Ex parte Butler*, 522 S.W.2d 196 (Tex. 1975), we recently said that in a suit by the State seeking to recover monetary penalties because of the violation of the Texas Solid Waste Disposal Act or the Texas Water Quality Act, the State could call the defendant as a witness or could take his deposition. We further said that the defendant could avoid answering a question only in the event his response might subject him to a criminal penalty. There is a difference between a proceeding which seeks to hold a party in contempt of court and a suit for "civil penalties": *prior* conduct cannot subject the party to confinement in jail in the suit for civil penalty. The same action may seek a monetary penalty and also an injunction which, if subsequently violated, might then lead to a contempt proceeding and possible confinement. In the present case the contemnor faces confinement only because he refuses to pay the fine which was assessed because of his contempt. Nevertheless, the party was subject to the penalty of confinement at the outset of the contempt proceeding.

It is my understanding of the United States Supreme Court writing that all alleged contemnors (at least in "criminal contempt" proceedings) must be given the privilege to decline to answer questions which might tend to prove their own contempt. I would stop there; I would not go further and reverse this case on the sole ground that Werblud was required to take the witness stand.

GREENHILL, C. J., and STEAKLEY and SAM D. JOHNSON, JJ., join in this dissent.