chambers 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-576-CV





EX PARTE: FRANKLIN D. CHAMBERS,



 RELATOR






 




ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY



 






 This is an application for writ of habeas corpus arising out of a trial court's
judgment of contempt against Franklin Chambers. In eight points of error, Chambers argues
essentially that the fine and jail confinement which the district court of Williamson County
imposed on him were excessive and unlawful, and that he was not subject to contempt for
disobeying the court's previous judgment of contempt because the order was not directed at him. 
We will deny Chambers' application for writ of habeas corpus.



BACKGROUND


 International Business Exchange Corporation ("IBEC") is an Austin-area business
broker that lists and sells businesses for its clients and earns commissions on the sales. IBEC
develops lists of potential customers from responses to its direct mail solicitation and inquiry. 
IBEC keeps the information from those responding on computer and creates customer lead lists. 
IBEC makes the list of potential customers available to its employees who then contact those on
the list hoping to sign them to exclusive listing agreements, allowing IBEC to market and sell their
businesses.

 Franklin Chambers, Allan Miller and Grady Royster worked at IBEC. At some
point, Chambers, Miller and Royster left IBEC and formed International Business Search, Inc.
("IBS"). Chambers incorporated IBS on April 9, 1992, listing himself, Miller, and Donna
Nichols as the initial directors. IBEC sought a temporary restraining order ("TRO") against the
three individuals and IBS. IBEC alleged that the defendants had taken its customer lead lists and
had formed IBS to compete directly with IBEC. IBEC further alleged that the defendants began
contacting IBEC's customers to solicit their business, using IBEC's form letters and representing
themselves as the "Davenport Street Branch" of IBEC. 

 During 1992, the trial court granted a TRO on July 15th, a temporary injunction
on August 12th, and an amended temporary injunction on August 19th. The court ordered IBS,
Chambers, Miller and Royster to return to IBEC all of its information, and enjoined them from
using IBEC's information or contacting the IBEC customers listed on that order's exhibit. (1) 

 On June 24, 1993, the court held IBS in contempt for violating the August 19th
temporary injunction because its representatives had contacted customer leads that IBEC had
originally given to Chambers and Royster. The June 24th order provided:



 IT IS THEREFORE ORDERED ADJUDGED AND DECREED by the
Court that International Business Search, Inc. is in contempt of Court for the
violations of the August 19, 1992 Amended Temporary Injunction Order which are
described in this Judgment of Contempt.


 IT IS FURTHER ORDER [sic], ADJUDGED AND DECREED by the
Court that as punishment for such contempt, International Business Search, Inc.
be and is fined the sum of $3,000, which sum shall be paid within seven days of the
date of this order.



(emphasis added). The order did not expressly address the individuals who had been the subject
of the August 19th order. 

 Thereafter, IBEC filed an amended motion for contempt and enforcement, alleging
that IBS was again in contempt for failing to pay the $3,000 fine it had been ordered to pay on
June 24th. IBEC moved that the court hold IBS, as well as its officers and directors, in contempt
for refusing to require IBS to pay the fine. IBEC requested that IBS and each officer and director
be ordered to pay a $500 fine for each day the $3,000 fine was not paid. 

 After a hearing, the court signed a contempt order on October 25, 1993. In an
amended judgment of contempt, signed November 22, 1993, the court held both IBS and
Chambers in contempt for violating its June 24th order of contempt. The court found that
Chambers was the officer, director and sole shareholder of IBS and held him in contempt for one
hundred fifteen separate offenses of failing to require IBS to pay the $3,000 fine. The court fined
Chambers $6,000 ($500 for each of twelve violations), sentenced him to jail for seven days, and
ordered that he remain in jail thereafter until he purge himself of the contempt by paying his
$6,000 fine. Chambers seeks habeas corpus relief from the November 22nd order.



DISCUSSION AND HOLDING


 In his first point of error, Chambers seems to argue that the purpose of the October
25th hearing was to compel IBS to pay the $3,000 fine, and thus those contempt proceedings were
civil rather than criminal in nature. Chambers contends, therefore, that the court could only
invoke remedial or conditional enforcement. Because the court ordered him to pay a fine of
$6,000 and assessed a mandatory seven-day jail sentence, Chambers complains that he was
unlawfully subjected to the court's criminal contempt enforcement powers. We disagree.

 Civil contempt judgments are remedial and coercive in nature. Ex parte Werblud,
536 S.W.2d 542, 545 (Tex. 1976). "A judgment of civil contempt exerts the judicial authority
of the court to persuade the contemnor to obey some order of the court where such obedience will
benefit an opposing litigant. Imprisonment is conditional upon obedience and therefore the civil
contemnor `carries the keys of [his] prison in [his] own pocket.'" Id. By contrast, criminal
contempt is punitive in nature. Id. In criminal contempt proceedings, the contemnor "is being
punished for some completed act which affronted the dignity and authority of the court." Id.
(citations omitted); Ex parte Johns, 807 S.W.2d 768, 771 (Tex. App.--Dallas 1991, orig.
proceeding). However, both types of contempt may be combined in the same order. Ex parte
Sanchez, 703 S.W.2d 955, 957 (Tex. 1986) (holding that a contempt order requiring a $500 fine,
thirty days in jail, and confinement until contemnor purged himself of contempt did not violate
contempt statute). 

 In the instant cause, the trial court's order both punished Chambers for not
complying with its previous judgment of contempt and compelled him to comply in the future. 
The November 22nd contempt order was not unlawful merely because it ordered both punishment
and coercion. Chambers' first point of error is overruled.

 In points of error six through eight, Chambers complains that he cannot be held in
contempt of the June 24th judgment because that order directs only IBS to pay a fine but does not
command Chambers, personally, to do anything. Chambers argues that his status as the sole
officer, director and shareholder of IBS in charge of day to day activities does not subject him to
contempt of an order directed solely to IBS.

 A command to a corporation is in effect a command to its responsible corporate
officials. Wilson v. United States, 221 U.S. 361, 376 (1910); Parker v. United States, 126 F.2d
370, 374 (1st Cir. 1942) (citation omitted); National Labor Relations Bd. v. Hopwood Retinning
Co., 104 F.2d 303, 305 (2d Cir. 1939); see also Clark v. Most Worshipful St. John's Grand
Lodge, 181 P.2d 229, 231 (Okla. 1947). "This applies to a civil as well as a criminal contempt." 
Parker, 126 F.2d at 379 (citation omitted). 

 In Wilson, the president of a corporation was held in contempt for refusing to
produce company books pursuant to a subpoena duces tecum directed to the corporation. In
denying him habeas corpus relief, the United States Supreme Court stated:



A command to the corporation is in effect a command to those who are officially
responsible for the conduct of its affairs. If they, apprised of the writ directed to
the corporation, prevent compliance or fail to take appropriate action within their
power for the performance of the corporate duty, they, no less than the corporation
itself, are guilty of disobedience, and may be punished for contempt.



Wilson, 221 U.S. at 376. 

 Chambers testified that he was the sole officer, director and shareholder of IBS,
and the court so found. On appeal, Chambers does not deny that he knew of the June 24th
contempt judgment; rather, Chambers argues he was "of the opinion and belief that the contempt
order affected International Business Search, Inc. only . . . ." We find this argument
unpersuasive. As the only person capable of causing IBS to pay the fine, Chambers' inaction
effectively violated the court's order. 

 Chambers relies upon two cases as authority for his arguments that he cannot be
held in contempt under an order directed to a corporation: Ex parte Hodges, 625 S.W.2d 304
(Tex. 1981) and Stoner v. Thompson, 553 S.W.2d 150 (Tex. Civ. App.--Houston [1st Dist.] 1977,
writ ref'd n.r.e.). We conclude that both cases are distinguishable. 

 In Hodges, the trial court appointed a receiver for a corporation and directed the
receiver to take possession and make a physical inventory of the company's merchandise. 
Hodges, 625 S.W.2d at 305. The trial court later held the company's president in contempt for
refusing to comply with the receiver's demand to turn over the inventory. Id. The Texas
Supreme Court held that the contempt must fail because the court order in question did not direct
either the president or the corporation to take any action. Id. at 306 (emphasis added). The court
reasoned that to hold Hodges in contempt would be, in effect, giving orders and requests of a
receiver the "same force and authority as if they were issued by the Court." Id. 

 In Stoner, the trial court issued a temporary injunction order declaring the right of
a corporation to inspect the records of a certain radio station. Stoner, 553 S.W.2d at 152. The
court of appeals declined to hold the general manager of the station in contempt for refusing to
allow an inspection. Id. The court of appeals reasoned that the order itself was not enforceable
by contempt because it merely declared the rights of the corporation but it did not define any
duties or acts which Stoner was required to do or refrain from doing. Id. at 153.

 Chambers has not demonstrated how the court erred by holding him in contempt
for violating its previous order. We overrule points of error six through eight.

 In his second point of error, Chambers argues that the $6,000 fine is excessive
under section 21.002(b) of the Government Code. Tex. Gov't Code Ann. § 21.002(b) (West
1988). In the amended judgment, the court orders that it is fining Chambers $500 per violation
for twelve of the one hundred fifteen acts of contempt, for a total fine of $6,000. Chambers
suggests that, although the amended judgment does not reflect the fact, the court's oral
pronouncements during the hearing reveal that the court actually reached the $6,000 sum by
merely doubling the original $3,000 fine. Chambers argues that the order is invalid and
unenforceable because it fails to recite what allegedly transpired.

 Chambers does not challenge the trial court's authority to modify its judgment
within thirty days of its signing, (2) nor does he challenge the court's authority to find one hundred
fifteen separate acts of contempt and to order a penalty for twelve of those violations. Rather,
Chambers complains because the court amended its judgment in order to "cure the defect" in its
original judgment. However, he does not point out any defect in the original judgment or explain
why such action by the trial court would be error. Further, he bases his position on oral
pronouncements he claims the court made before signing the original judgment. We cannot
consider the trial court's oral statements, see Jampole v. Touchy, 673 S.W.2d 569, 574 (Tex.
1984), and even assuming we could, despite Chambers' repeated assertion, we have not found
anywhere in the court's rendition on October 25, 1993, a statement concerning the court's
"doubling" of the $3,000 fine. As the alleged oral pronouncement is the basis for Chambers'
argument, we overrule the point of error.

 In his fifth point of error, Chambers contends that the order of punishment and
commitment is unlawful because it does not permit him to earn credit for jail time served toward
the payment of his $6,000 fine. Chambers cites no cases or authority of any kind to support his
contentions, see Tex. R. App. P. 74(f), but merely asserts that "[i]n the event the Relator does
not have funds available to pay the fine" he should be allowed to satisfy the fine by serving a
determined number of days and receiving monetary credit for them. Chambers has not
demonstrated any error; therefore, we find this contention without merit. We overrule Chambers'
fifth point of error. 

 In his fourth point of error, Chambers argues that the punishment and commitment
orders are unlawful "because they order the Relator to jail for an indeterminate period of time and
contain no purging provision." Chambers again argues that because this was a civil, rather than
a criminal, contempt proceeding, the trial court's commitment order is invalid because it provides
for an unconditional seven-day jail sentence. We have already addressed this argument in our
discussion of Chambers' first point of error. Both civil and criminal contempt orders may be
combined into one order. See Sanchez, 703 S.W.2d at 957. Chambers further complains because
"the imprisonment is to continue for an indefinite period of time. It is to last for a period of 7
days, and thereafter until thereafter until [sic] the Relator purges himself of contempt by paying
the sum of $6,000.00." (emphasis added). The express terms of the court's order directly conflict
with Chambers' point of error contending there is no purging provision. Furthermore, we do not
see how Chambers can argue that the commitment order is "indeterminate" when he admits it
contains a purging provision. Nevertheless, we find nothing wrong with the court's order of
commitment for seven days and thereafter until Chambers purges himself of contempt by paying
the ordered fine. It is the settled rule in Texas that "it is civil contempt when one `may procure
his release by compliance with the provisions of the order of the court.'" Ex parte Werblud, 536
S.W.2d at 545. We overrule point of error number four.

 In his third point of error, Chambers argues that section 21.002 of the Government
Code authorizes imprisonment not to exceed six months. Tex. Gov't Code Ann. § 21.002 (West
1988 & Supp. 1994). He contends that because his imprisonment could conceivably last for more
than six months if he does not pay the $6,000 fine, the court's order is unlawful. This argument
is without merit. Section 21.002 provides the limitations on courts in punishing a person for
contempt. Subsection (e) of that provision specifically states, "[t]his section does not affect a
court's power to confine a contemner to compel him to obey a court order." We overrule
Chambers' third point of error.

 Having overruled all points of error, we deny Chambers' application for writ of
habeas corpus, and the relator is remanded to the custody of the sheriff of Williamson County.



 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Relator Ordered Remanded

Filed: March 30, 1994

Do Not Publish

1.   The record also reflects that on January 4, 1993, the court granted IBEC a second
TRO, and on January 15, 1993, the court issued an agreed temporary injunction, in
which the court enjoined IBS, Miller, Royster and their agents and representatives from
contacting the IBEC customers listed on that order's exhibits. On February 2, 1993, the
court held IBS, Chambers, Miller, and Royster in contempt for violating the court's July
15th and August 12th orders of the previous year.
2.   See Tex. R. Civ. P. 329b(d).