NO.
12-06-00297-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS FOR        §                      APPEAL FROM THE 

 

THE BEST INTEREST        §                      COUNTY COURT AT LAW

 

AND PROTECTION OF
F.H.         §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


OPINION

            F.H. appeals
from an order authorizing the administration of psychoactive
medication-forensic.  In her sole issue,
F.H. argues that the trial court erred in granting the order based upon the
United States Supreme Court’s opinion in Sell v. United States,
539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).  We reverse and render.

 

Background








            On
August 10, 2006, an application for an order to administer psychoactive
medication-forensic was filed by Dr. Satyajeet Lahiri.  In the application, Lahiri stated that F.H.
was subject to an order dated June 16 for court ordered inpatient mental health
services under Chapter 46B of the Texas Code of Criminal Procedure because she
had been found incompetent to stand trial. 
The clerk’s record showed that F.H. was charged with criminal trespass
of a building, a Class B misdemeanor. 
Lahiri stated that F.H. had been diagnosed with bipolar disorder, manic
with psychosis.  Lahiri wanted the trial
court to compel F.H. to take five psychoactive medications: an antidepressant,
an anxoilytic/sedative/hypnotic, a mood stabilizer, and two
antipsychotics.  Lahiri stated that F.H.
refused to take the medications voluntarily and that he believed F.H. lacked
the capacity to make a decision regarding administration of psychoactive
medications because she was acutely psychotic with aggressive behavior. 

            Lahiri
concluded that the proposed medications were the proper course of treatment for
F.H. and that if she were treated with the medications, her prognosis would be
good.  However, Lahiri believed that if
F.H. was not administered the medications, the consequences would be poor.  Lahiri considered other medical alternatives
to psychoactive medication, but determined that those alternatives would not be
as effective.  He also considered less
intrusive treatments likely to secure F.H.’s agreement to take the psychoactive
medications.  Finally, Lahiri believed
that the benefits of the psychoactive medications outweighed the risks in
relation to present medical treatment and F.H.’s best interest.

            On
August 15, the trial court held a hearing on the application.  Lahiri testified that he was F.H.’s treating
physician and that F.H. was currently under court ordered mental health
services under Chapter 46B because she had been found incompetent to stand
trial. Lahiri stated that F.H. refused to accept medications voluntarily and
that he believed she lacked the capacity to make a decision regarding the
administration of psychoactive medications. 
Lahiri diagnosed F.H. with bipolar disorder, manic, with psychosis.  He testified that all the medications were in
the proper course of treatment and that treatment with these medications was in
F.H.’s best interest.  Lahiri stated that
F.H. would likely benefit from the use of these medications, that the benefits
outweighed the risks, and that F.H.’s hospital stay would likely be
shortened.  Moreover, Lahiri testified
that there were no less intrusive means of achieving the same or similar
results.

            On
cross examination, Lahiri admitted that the proposed medications had side
effects, including mild sedation, suicidal ideations, stiffness, shaking,
drooling, tardive dyskinesia,[1] gait disturbance, nausea, and stomach
irritability.  According to Lahiri, most
of these side effects would not impair consciousness or alertness.  Before closing, F.H. requested that the trial
court dismiss the application based upon Sell.  However, the trial court granted the
application.  After the court’s ruling,
F.H. asked how long her stay would be. 
The trial court responded that F.H. would stay at the hospital until she
was competent to stand trial.

            In
an order signed on August 15, 2006, after considering all the evidence,
including the application and the expert testimony, the trial court found that
the allegations in the application were true and correct and supported by clear
and convincing evidence.  The trial court
found that F.H. lacked the capacity to make a decision regarding administration
of medications and that treatment with the proposed medication was in F.H.’s
best interest.  The trial court
authorized the Department to administer F.H. psychoactive medications,
including antidepressants, antipsychotics, mood stabilizers, and
anxiolytics/sedatives/hypnotics.  This
appeal followed.

 

Involuntary
Administration of Psychoactive Medications

            In
her sole issue, F.H. argues that the trial court erred in granting the order
authorizing administration of psychoactive medication-forensic.  More specifically, F.H. contends that the
State does not have an important governmental interest in medicating her to
render her competent to stand trial because she is not accused of committing a
serious crime.  The State disagrees.

Applicable Law

            An
individual has a constitutionally protected liberty interest in avoiding the
involuntary administration of antipsychotic drugs. Sell, 539 U.S.
at 178, 123 S. Ct. at 2183; United States v. Leveck-Amirmokri,
No. EP-04-CR-0961-DB, 2005 WL 1009791, at *3 (W.D. Tex. Mar. 10, 2005). The
United States Constitution permits the government to involuntarily administer
antipsychotic drugs to a mentally ill defendant facing serious criminal charges
in order to render that defendant “competent to stand trial, but only if the
treatment is medically appropriate, is substantially unlikely to have side
effects that may undermine the fairness of the trial, and, taking account of
less intrusive alternatives, is necessary significantly to further important
governmental trial-related interests.” Sell, 539 U.S. at 179, 123
S. Ct. at 2184.  Before antipsychotic
drugs can be involuntarily administered when applying the above standard, a
court must (1) find that important governmental interests are at stake, (2)
conclude that involuntary medication will significantly further those
concomitant state interests, (3) conclude that involuntary medication is
necessary to further those state interests, and (4) conclude that
administration of the drugs is medically appropriate. Id., 539
U.S. at 180-81, 123 S. Ct. at 2184-85.  A
court need not consider whether to allow forced medication for purposes of
rendering the defendant competent to stand trial if forced medication is
warranted for a different purpose, such as the defendant’s dangerousness or
where refusal to take drugs puts the defendant’s health at risk.  Id., 539 U.S. at 181-82, 123 S.
Ct. at 2185. 

Analysis

            As
an initial matter, we note that there is no evidence that F.H. was dangerous to
herself or others.  The trial court found
that F.H. lacked the capacity to make a decision regarding administration of
medications, not that she was a danger to herself or others.  The trial court also found that treatment
with the proposed medication was in F.H.’s best interest, but there was no
testimony or finding that her health was at risk if she did not take the proposed
medications.  Therefore, under Sell,
we must determine whether the involuntary administration of psychoactive drugs
to F.H. in order to render her competent to stand trial was constitutionally
permissible.  See id.,
539 U.S. at 179, 123 S. Ct. at 2184. 

            Under
the first component of the Sell standard, we must determine if
there were important governmental interests at stake that necessitated the
involuntary administration of these drugs to F.H. See id.,
539 U.S. at 180, 123 S. Ct. at 2184.  The
government’s interest in bringing to trial an individual accused of a serious
crime is important, whether the offense is a serious crime against persons or
against property.  See id.,
539 U.S. at 180, 123 S. Ct. at 2184. 
Thus, the relevant question is what constitutes a “serious crime.”  See United States v. Barajas-Torres,
No. CRIM.EP-03-CR-2011KC, 2004 WL 1598914, at *2  (W.D. Tex. July 1, 2004).  When addressing other constitutional issues,
the United States Supreme Court and the Texas Supreme Court have defined a “serious
offense” as one for which a defendant may be sentenced to imprisonment for more
than six months.  See Baldwin v.
New York, 399 U.S. 66, 69, 90 S. Ct. 1886, 1888, 26 L. Ed. 2d 437
(1970)(determining whether defendant had a right to a jury trial); Ex
parte Werblud, 536 S.W.2d 542, 547 (Tex. 1976)(determining whether
relator had a right to a jury trial in a contempt hearing).  Here, F.H. was charged with criminal trespass
of a building, a Class B misdemeanor.[2]  If convicted, F.H. may be punished by
confinement in jail for a term not to exceed 180 days, or six months.[3]  Because F.H.’s potential punishment was not
more than six months of imprisonment, the crime F.H. is charged with is not a “serious
crime.”  See Baldwin, 399
U.S. at 69, 90 S. Ct. at 1888; Ex parte Werblud, 536 S.W.2d at
547.  Thus, we conclude that no important
governmental interests were at stake that necessitated the involuntary
administration of psychoactive drugs to F.H. in order to render her competent
to stand trial.  See Sell,
539 U.S. at 179-80, 123 S. Ct. at 2184. 
Because the State failed to satisfy the first component of the Sell
standard, we need not consider the remaining three components.  F.H.’s sole issue is sustained. 

 

Disposition

            We
reverse the trial court’s order authorizing the administration of
psychoactive medication-forensic.  We render
judgment denying the State’s application for an order to administer
psychoactive medication-forensic.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion
delivered January 31, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1] Tardive dyskinesia is a chronic disorder of
the nervous system characterized by involuntary jerky movements of the face,
tongue, jaws, trunk, and limbs, usually developing as a late side effect of
prolonged treatment with antipsychotic drugs. 
See The American Heritage ® Stedman’s Medical Dictionary 817
(1995). 





[2] See
Tex. Pen. Code Ann. § 30.05(a), (d) (Vernon Supp. 2006). 





[3] See
Tex. Pen. Code Ann. § 12.22 (Vernon 2003).