NO.
12-06-00423-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

THE STATE OF TEXAS     §                      APPEAL FROM THE 

 

FOR THE BEST INTEREST          §                      COUNTY COURT AT LAW

 

AND PROTECTION OF
F.B.         §                      CHEROKEE COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            F.B. appeals
from an order authorizing the administration of psychoactive
medication-forensic.  In his sole issue,
F.B. argues that the trial court erred in granting the order based upon the
United States Supreme Court’s opinion in Sell v. United States,
539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).  We reverse and render.

 

Background

            On
December 11, 2006, Dr. Sethurama Srinivasan filed an application for an order
to administer psychoactive medication-forensic to F.B.  In the application, Srinivasan stated that
F.B. was subject to an order dated November 29, 2006 for court ordered
inpatient mental health services under Chapter 46B of the Texas Code of
Criminal Procedure because he had been found incompetent to stand trial.  Srinivasan stated that F.B. had been diagnosed
with schizophrenia and wanted the trial court to compel F.B. to take four
psychoactive medications: an antidepressant, an anxoilytic/sedative/hypnotic, a
mood stabilizer, and an antipsychotic. 
Srinivasan stated that F.B. verbally refused to take the medications
voluntarily and that he believed F.B. lacked the capacity to make a decision
regarding administration of psychoactive medications because he was psychotic.








            Srinivasan
determined that the proposed medications were the proper course of treatment
for F.B. and that if he were treated with the medications his prognosis would
be fair.  However, Srinivasan believed
that if F.B. was not administered the medications, his mental health would
deteriorate.  Srinivasan considered other
medical alternatives to psychoactive medication, but determined that those
alternatives would not be as effective. 
He also considered less intrusive treatments likely to secure F.B.’s
agreement to take the psychoactive medications. 
Finally, Srinivasan believed that the benefits of the psychoactive
medications outweighed the risks in relation to present medical treatment and
F.B.’s best interest.

            On
December 15, the trial court held a hearing on the application.  Srinivasan testified that he was F.B.’s
treating physician and that F.B. was currently under court ordered mental
health services under Chapter 46B because he had been found incompetent to
stand trial.  Srinivasan stated that F.B.
verbally or otherwise refused to accept medications voluntarily and that he
believed F.B. lacked the capacity to make a decision regarding the
administration of psychoactive medications. Srinivasan stated that he completed
the application for psychoactive medications and that F.B. suffered from
schizophrenia.  He testified that the
classifications of medications listed in the exhibit attached to the
application were in the proper course of treatment and that treatment with
these medications was in F.B.’s best interest. 
Srinivasan stated that F.B. would likely benefit from the use of these
medications, that the benefits outweighed the risks, and that F.B.’s hospital
stay would likely be shortened.  He also
stated that F.B. was transferred to the hospital on November 29, 2006. 

            On
cross examination, Srinivasan stated that he had F.B.’s medical records in his
possession at the hearing and that he normally relied upon these records in
making his determination regarding medication. 
Further, he admitted that he was the custodian of F.B.’s medical records
and that these records were made at or near the time of the incident by someone
with knowledge of the incident. Under the section of F.B.’s medical records
marked “prior summaries,” Srinivasan stated that this hearing was based upon
the fact that F.B. had been charged with possession of marijuana, less than two
ounces.  The records also indicated that
the charge was a Class B misdemeanor and that F.B. had been arrested on June
15, 2006.  Srinivasan also acknowledged
that the psychiatric evaluation was filed with the court on September 11, 2006.


            Srinivasan
stated that he spoke to F.B. regarding the use of medications and that,
initially, F.B. agreed to take the medications. 
After a few days, F.B. withdrew his consent.  Since withdrawing his consent, F.B.’s
condition had deteriorated.  Srinivasan
stated that F.B. was under a 120 day commitment and that he did not expect F.B.
to become competent without medication. Srinivasan believed that with
medication, F.B. could be released after four to six weeks. 

            At
the beginning of Srinivasan’s cross examination, the trial court noted that
F.B. had been constantly talking loudly and interrupting his counsel’s
questioning.  Shortly thereafter, the
trial court again noted that F.B. had been speaking out and disturbing the
proceedings.  The trial court ordered
that F.B. be taken out of the courtroom, stating that no one could hear because
of his constant loud talking.  The trial
court ordered that F.B. be put in a chair where he could see what was occurring
in the courtroom, but far enough away that his loud talking would not interrupt
the proceedings. 

            Before
closing, F.B. moved for directed verdict based upon Sell v. United States,
539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).  F.B. stated that there was no governmental
interest in medicating him because the sentence for a Class B misdemeanor was a
maximum of six months confinement.  The
trial court took judicial notice that there was a governmental interest in
convicting F.B. because the offense was enhanced, noting that “they become
multiple offenses.”[1] Thus, the trial court denied F.B.’s motion. 

            On
December 15, 2006, after considering all the evidence, including the
application and the expert testimony, the trial court found that the
allegations in the application were true and correct and supported by clear and
convincing evidence.  The trial court
found that F.B. lacked the capacity to make a decision regarding administration
of medications and that treatment with the proposed medication was in F.B.’s
best interest.  The trial court
authorized the Texas Department of State Health Services to administer F.B.
psychoactive medications, including antidepressants, antipsychotics, mood
stabilizers, and anxiolytics/sedatives/hypnotics.  This appeal followed.

 

Involuntary
Administration of Psychoactive Medications

            In
his sole issue, F.B. argues that the trial court erred in granting the order
authorizing administration of psychoactive medication-forensic.  More specifically, F.B. contends that the
State had no important governmental interest in medicating him.  He further contends that if important
government interests are at stake, involuntary medication will not
significantly further those interests, involuntary medication is not necessary
to further those interests, and administration of the drugs is not medically
appropriate and in F.B.’s best medical interest.

Applicable Law

            An
individual has a constitutionally protected liberty interest in avoiding the
involuntary administration of antipsychotic drugs.  Sell, 539 U.S. at 178, 123 S.
Ct. at 2183; United States v. Leveck-Amirmokri, No.
EP-04-CR-0961-DB, 2005 WL 1009791, at *3 (W.D. Tex. Mar. 10, 2005). The United
States Constitution permits the government to involuntarily administer
antipsychotic drugs to a mentally ill defendant facing serious criminal charges
in order to render that defendant “competent to stand trial, but only if the
treatment is medically appropriate, is substantially unlikely to have side
effects that may undermine the fairness of the trial, and, taking account of
less intrusive alternatives, is necessary significantly to further important
governmental trial-related interests.”  Sell,
539 U.S. at 179, 123 S. Ct. at 2184.  In
applying the above standard, a court must (1) find that important governmental
interests are at stake, (2) conclude that involuntary medication will
significantly further those concomitant state interests, (3) conclude that
involuntary medication is necessary to further those state interests, and (4)
conclude that administration of the drugs is medically appropriate.  Id., 539 U.S. at 180-81, 123 S.
Ct. at 2184-85.  A court need not
consider whether to allow forced medication for purposes of rendering the
defendant competent to stand trial if forced medication is warranted for a different
purpose, such as the defendant’s dangerousness or where refusal to take drugs
puts the defendant’s health at risk.  Id.,
539 U.S. at 181-82, 123 S. Ct. at 2185. 

Analysis








            As
an initial matter, we note that there is no evidence that F.B. was dangerous to
himself or others.  The trial court found
that F.B. lacked the capacity to make a decision regarding administration of
medications, not that he was a danger to himself or others.  The trial court also found that treatment
with the proposed medication was in F.B.’s best interest, but there was no
testimony or finding that his health was at risk if he did not take the
proposed medications. Therefore, under Sell, we must determine
whether the involuntary administration of psychoactive drugs to F.B. in order
to render him competent to stand trial was constitutionally permissible.  See id., 539 U.S. at
179, 123 S. Ct. at 2184. 

            Under
the first component of the Sell standard, we must determine if
there were important governmental interests at stake that necessitate the involuntary
administration of these drugs to F.B. See id., 539 U.S. at
180, 123 S. Ct. at 2184.  The government’s
interest in bringing to trial an individual accused of a serious crime is
important, whether the offense is a serious crime against persons or
property.  See id.,
539 U.S. at 180, 123 S. Ct. at 2184. 
Thus, the relevant question becomes what constitutes a “serious crime.”  See United States v. Barajas-Torres,
No. CRIM.EP-03-CR-2011KC, 2004 WL 1598914, at *2  (W.D. Tex. July 1, 2004).  When addressing other constitutional issues,
the United States Supreme Court and the Texas Supreme Court have defined a “serious
offense” as one for which a defendant may be sentenced to imprisonment for more
than six months.  See Baldwin v.
New York, 399 U.S. 66, 69, 90 S. Ct. 1886, 1888, 26 L. Ed. 2d 437
(1970) (determining whether defendant had a right to a jury trial); Ex
parte Werblud, 536 S.W.2d 542, 547 (Tex. 1976)(determining whether
relator had a right to a jury trial in a contempt hearing).

            According
to Srinivasan’s records, F.B. was charged with possession of marijuana of two
ounces or less, a Class B misdemeanor.[2]  If convicted, F.B. may be punished by
confinement in jail for a term not to exceed 180 days, or six months.[3]  Because F.B.’s potential punishment was not
more than six months of confinement, the crime F.B. is charged with is not a “serious
crime.”  See Baldwin, 399
U.S. at 69, 90 S. Ct. at 1888; Ex parte Werblud, 536 S.W.2d at
547.  We note that the trial court stated
that F.B.’s offense was enhanced and that “they become multiple offenses.”  However, nothing in the record supports the
trial court’s comments.  Thus, we
conclude that no important governmental interests were at stake in
involuntarily administering antipsychotic drugs to F.B. in order to render him
competent to stand trial.  See Sell,
539 U.S. at 179, 123 S. Ct. at 2184. Because the State failed to satisfy the
first component of the Sell standard, we need not consider the
remaining three elements. Accordingly, F.B.’s sole issue is sustained.

 

 

Conclusion

            Based
upon our review of the record, we conclude that the State failed to show that
there were important governmental interests at stake in involuntarily
administering psychoactive drugs to F.B. in order to render him competent to
stand trial.

            We
reverse the trial court’s order authorizing the administration of
psychoactive medication-forensic.  We render
judgment denying the State’s application for an order to administer
psychoactive medication-forensic.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion
delivered July 31, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)











[1] The trial court did not elaborate on why the
Class B misdemeanor charge was enhanced nor did it explain how the offense
against F.B. became “multiple offenses.”





[2] See
Tex. Health & Safety Code Ann. § 481.121(a), (b)(1) (Vernon 2003). 





[3] See
Tex. Penal Code Ann. § 12.22 (Vernon 2003).