In re R. Jeanette HAMMOND, Relator.

No. 08–03–00400–CV.

Court of Appeals of Texas, El Paso.

Jan. 15, 2004.

Al Weisenberger, El Paso, for Relator.

Susan M. Urbieta, El Paso, for Real Party In Interest.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

R. Jeanette Hammond filed a petition for writ of habeas corpus in this Court, seeking to be discharged from confinement pursuant to a trial court order holding her in contempt for failing to pay child support. On August 29, 2003, this Court granted the writ and ordered her discharged upon the posting of a $100 bond. For the reasons that follow, we overrule the issues raised by Hammond in this proceeding. Therefore, we will remand her to the custody of the El Paso County Sheriff.

### FACTUAL AND PROCEDURAL BACKGROUND

Hammond and Wiley F. James, III, are the parents of a daughter. On June 1, 2001, they agreed to an order that requires Hammond to pay James $443.57 per month in child support. The order further provides that if James determines that their daughter's best interest would be served by attending private school or by receiving tutoring, he is authorized to enroll her in a private school of his choice or to make arrangements for tutoring, and Hammond must pay 50 percent of the costs. Hammond must also pay 50 percent of their daughter's uninsured medical expenses.

James later filed a motion in the 171st Judicial District Court to enforce the order and to hold Hammond in contempt. He alleged that Hammond had violated the order by failing to pay child support or to reimburse him for uninsured medical expenses and private school tuition. James requested that Hammond be held in civil contempt for disobeying the order.

On August 14 and 15, 2003, the parties appeared along with counsel for a hearing on James's motion. On August 15, the trial court signed an order holding Hammond in criminal and civil contempt. The court determined that Hammond was in arrears on her child support obligation in the amount of $5,866.19, was in arrears on her obligation for private school tuition in the amount of $6,623.68, and was in arrears on her obligation to pay uninsured medical expenses in the amount of $1,284.75. The total arrearage was $13,774.62.

Hammond failed to make fifteen child support payments, two payments for private school expenses, and seventy-two payments for uninsured medical expenses. In assessing punishment for criminal contempt, the court sentenced her to sixty days in jail for each of these eighty-nine violations, to be served consecutively. In sanctioning Hammond for civil contempt, the court ordered Hammond to be confined until she pays the total arrearage of $13,774.62 and James's attorneys' fees in the amount of $17,000.28. But the court suspended her commitment until August 28 and provided that if she paid the total arrearage and the attorneys' fees by that date, she would not go to jail.

Because Hammond failed to pay the amount due by August 28, she was committed to jail on that date. On August 29, she filed a petition for writ of habeas corpus and was released from jail by order of this Court, upon the posting of a $100 bond.

The case was subsequently transferred from the 171st Judicial District Court to the 383rd Judicial District Court. On November 8, 2003, the 383rd Judicial District Court signed a *nunc pro tunc* order. This order is substantially similar to the August 28 order, except that it does not contain a finding of criminal contempt.

## HAMMOND'S ARGUMENTS

Hammond argues that she was denied her right to a jury trial and that she was denied due process because she does not have the ability to pay the amounts ordered by the trial court, she was not allowed an opportunity to present evidence of her inability to pay, and the trial court failed to make a finding that she had the ability to pay. She also argues generally that her confinement is illegal, unconstitutional, excessive, cruel, and unusual, and an abuse of discretion.

## STANDARD OF REVIEW

In a habeas corpus proceeding, the guilt or innocence of the relator is not an issue. *Ex parte Kimsey*, 915 S.W.2d 523, 525 (Tex.App.-El Paso 1995, orig. proceeding). The only issue is the legality of the relator's confinement. *Id.* A writ of habeas corpus will not issue if a contempt order is merely erroneous. *Ex parte Swate*, 922 S.W.2d 122, 124 (Tex.1996). But a writ will issue if the order is void. *Id.; Kimsey*, 915 S.W.2d at 525. In the context of a habeas proceeding, a contempt order is void if it is beyond the power of the court to enter or if it deprives the relator of liberty without due process of law. *Swate*, 922 S.W.2d at 124; *Kimsey*, 915 S.W.2d at 525. The relator bears the burden of showing entitlement to relief in a habeas corpus proceeding. *Kimsey*, 915 S.W.2d at 525.

Regarding evidentiary challenges, we do not have jurisdiction to assess the witnesses' credibility or to weigh the evidence. *Ex parte Hightower*, 877 S.W.2d 17, 20 (Tex.App.-Dallas 1994, orig. proceeding). We may only determine whether the trial court's contempt finding is so completely without evidentiary support that it deprives the relator of liberty without due process of law. *Id.*

**226**

### RIGHT TO A JURY TRIAL

■■ In her first issue, Hammond argues that she was denied her right to a jury trial. When a contemnor has a right to a jury trial, the record must show that the court informed her of the right and that she affirmatively waived that right. *Ex parte Sproull*, 815 S.W.2d 250, 250 (Tex.1991); *Ex parte Casillas*, 25 S.W.3d 296, 299 (Tex.App.-San Antonio 2000, orig. proceeding); *Ex parte Levingston*, 996 S.W.2d 936, 938 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding). We cannot presume that a jury was waived when the record is silent on the matter. *Sproull*, 815 S.W.2d at 250; *Casillas*, 25 S.W.3d at 299; *Levingston*, 996 S.W.2d at 938.

■ There is no absolute right to a jury trial in a contempt proceeding. *See Muniz v. Hoffman*, 422 U.S. 454, 475–77, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319 (1975); *Ex parte Werblud*, 536 S.W.2d 542, 546–47 (Tex.1976); *Casillas*, 25 S.W.3d at 299. A person held in civil contempt is not entitled to a jury trial. *Shillitani v. United States*, 384 U.S. 364, 370–71, 86 S.Ct. 1531, 1536, 16 L.Ed.2d 622 (1966); *Ex parte Johns*, 807 S.W.2d 768, 772 (Tex. App.-Dallas 1991, orig. proceeding). The right generally attaches only when the contemnor is held in criminal contempt and assessed a serious punishment. *See Muniz*, 422 U.S. at 476–77, 95 S.Ct. at 2190; *Werblud*, 536 S.W.2d at 546–47.

■ Confinement for more than six months is considered serious punishment. *See Sproull*, 815 S.W.2d at 250; *Werblud*, 536 S.W.2d at 546–47; *Casillas*, 25 S.W.3d at 299. Confinement for six months or less, on the other hand, is considered petty and does not entail a right to a jury trial. *Werblud*, 536 S.W.2d at 546; *Casillas*, 25 S.W.3d at 299. But even if the contemnor is sentenced to no more than six months' confinement for each of several contumacious acts, the punishment is considered serious if the sentences must be served consecutively and they add up to more than six months' confinement. *Ex parte Sanchez*, 703 S.W.2d 955, 957 (Tex.1986); *Casillas*, 25 S.W.3d at 299.

■ A judgment that orders a contemnor confined unless and until she performs some act is a judgment of civil contempt. *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988); *Johns*, 807 S.W.2d at 770. Unlike confinement for civil contempt, confinement for criminal contempt is for a definite period and is unconditional; there is nothing the contemnor can do to purge herself of the contempt. *Hicks*, 485 U.S. at 631–32, 108 S.Ct. at 1429; *Johns*, 807 S.W.2d at 771.

■ In this case, the trial court initially held Hammond in both criminal and civil contempt. The court ordered her confined for sixty days for each of the eighty-nine separate violations of the prior order. Furthermore, the sixty-day sentences were to be served consecutively. Because this adds up to a sentence of 5,340 days in jail, or more than fourteen and a half years, Hammond had a right to a jury. Yet there was no jury, and there is nothing in the record before this Court to reflect that Hammond was informed of her right to a jury trial or that she affirmatively waived that right. Accordingly, the portions of the August 15 and August 28 orders that held Hammond in criminal contempt are void.

We note that the trial court attempted to replace these orders with the November 8 *nunc pro tunc* order, which eliminated the criminal contempt provisions. Hammond argues that the *nunc pro tunc* order is ineffective because it does more than correct clerical errors in the earlier orders and was not signed within the period of

the trial court's plenary power. *See* TEX.R. CIV. P. 329b(f).

 Rule 329b, which limits a trial court's plenary power to alter a judgment, does not apply to contempt orders. *See Ex parte Anderson*, 900 S.W.2d 333, 335 n. 1 (Tex.1995) (orig.proceeding). Therefore, the *nunc pro tunc* order would not be rendered ineffective by the court's failure to sign it within the usual period of plenary power.[1]

The supreme court has held that a trial court cannot enter a new contempt judgment after a habeas proceeding has been filed in an appellate court. *See, e.g., Anderson*, 900 S.W.2d at 334–35 (holding that a trial court could not enter a new contempt judgment that corrected the earlier judgment's failure to state how the contemnor could purge himself because the new judgment was not signed close enough in time to the original pronouncement of contempt); *Ex parte Delcourt*, 888 S.W.2d 811, 812 (Tex.1994) (orig.proceeding) (holding that a trial court could not enter a new contempt judgment that included additional violations while a habeas proceeding was pending in the appellate court because the new judgment was not signed close enough in time to the original pronouncement of contempt); *Ex parte Barnett*, 600 S.W.2d 252, 256–57 (Tex.1980)

(orig.proceeding) (holding that a trial court could not correct its failure to enter a written judgment at the time the contemnor was confined by entering a written contempt judgment eighty days later and that after the supreme court granted the writ of habeas corpus the trial court lost jurisdiction over the contemnor). In these cases, the trial court's rulings worked to the disadvantage of the contemnor. In this case, the *nunc pro tunc* order benefitted Hammond by eliminating the finding of criminal contempt. We find it unnecessary to decide whether a trial court can modify its contempt judgment to benefit the contemnor while a habeas proceeding is pending. Regardless of whether the *nunc pro tunc* order validly eliminated the finding of criminal contempt, the portions of the earlier orders finding Hammond in criminal contempt are void and ineffective because Hammond's right to a jury trial was violated.

 With the elimination of the criminal contempt finding, only the finding of civil contempt remains at issue. Hammond was not entitled to a jury trial before being found in civil contempt. *See Levingston*, 996 S.W.2d at 938; *Johns*, 807 S.W.2d at 772. Hammond's first issue is overruled.[2]

---

**1.** In any event, the *nunc pro tunc* order was signed within the usual period of plenary power. Hammond filed a timely motion for new trial on September 15, 2003, which, as far as our records reflect, was not overruled by a written order. *See* TEX.R. CIV. P. 329b(a). When a motion for new trial is not overruled by a written order, it is deemed overruled by operation of law seventy-five days after the judgment was signed, and the trial court has plenary power to alter the judgment for thirty days after the deemed overruling. TEX.R. CIV. P. 329b(c), (e). A trial court is not limited to correcting clerical errors when it alters a judgment during the period of its plenary power. *See* TEX.R. CIV. P. 329b(e), (f).

**2.** Hammond argues in a supplemental brief that she was also entitled to a jury trial because James filed a jury request and paid the fee. She relies on Rule 220 of the Texas Rules of Civil Procedure, which provides, "When any party has paid the fee for a jury trial, he shall not be permitted to withdraw the cause from the jury docket over the objection of the parties adversely interested." By its terms, this rule requires a party relying on another party's jury request to object to the removal of the case from the jury docket. Here, Hammond appeared in person and through counsel and proceeded to try the issues with no objection to the absence of a jury. Therefore, she waived her right under Rule 220. *See In the Interest of A.M.*, 936

## INABILITY TO PAY

In her second issue, Hammond asserts that she is unable to pay the child support. A person cannot be incarcerated indefinitely for civil contempt if she does not have the ability to perform the condition required for release. *Ex parte Rojo*, 925 S.W.2d 654, 655–56 (Tex.1996). Consequently, a person cannot be held in contempt for failing to pay child support if she establishes that she: (1) lacked the ability to provide support in the amount ordered; (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the needed funds; (3) attempted unsuccessfully to borrow the needed funds; and (4) knew of no source from which the money could have been borrowed or legally obtained. TEX. FAM.CODE ANN. § 157.008(c) (Vernon 2002). A contemnor is not entitled to habeas relief based on this statute unless she conclusively established all four elements in the trial court. *See Rojo*, 925 S.W.2d at 656; *Hightower*, 877 S.W.2d at 20.

The record reveals that when the parties agreed to the June 2001 order, Hammond was earning $2,500 a month as a teacher. In September 2002, Hammond began working as an attorney for $3,206 a month. She still had this position at the time of the August 14–15 hearing. Hammond testified, however, that she was working under a provisional license in New Mexico and that her current position was going to end in October 2003 because she had not taken the New Mexico bar examination. She claimed that she did not have the money to take the examination. She had applied for about fifteen legal jobs. She still had a Texas law license. At the August 28 hearing, Hammond informed the trial court that she had lost her job because of the contempt finding.

In June 2001, Hammond had housing expenses because she was estranged from her current husband, Charles, and they were not living together. But she and Charles reconciled in the summer of 2002. Since that time, Hammond has lived in a ranch house that is apparently owned by a corporation in which Charles and two of his family members are the only shareholders. The Hammonds do not pay rent or make mortgage payments on the ranch house.

From August 2002 through July 2003, the Hammonds received between $17,000 and $20,000 of oil and gas income. The Hammonds also benefit from a net operating loss that relieves them of paying federal income tax for several years into the future. Jeanette Hammond owns a one-third undivided interest in at least 640 acres of land that would be valued at more than $100 an acre. She tried to borrow money using that land as collateral, but was unsuccessful. She also tried to sell it to her sister and mother, the owners of the remaining interests in the land, but they refused to purchase it.

Hammond testified that she did not have any property that she could sell or mortgage or any other source of money or property from which she could obtain funds and that she was not able to borrow the money necessary to pay the child support arrearage. She claimed that she has already sold all of her jewelry and furniture, some items she inherited from her grandmother, and some art. When asked by her attorney why she was unable to pay child support during the period in which the arrearages accrued, she testified, "My expenses had increased. My income had gone down pretty substantially." She stated that her husband had health expenses

associated with diabetes. Hammond also testified that when she agreed to the June 2001 order, she hoped that her income would go up to $58,000.

From this review of the record, we cannot say that Hammond conclusively established the four elements of section 157.008(c). Nor can we say that the trial court's finding that Hammond has the ability to pay is so completely without evidentiary support that it amounts to a denial of due process. There was evidence from which the trial court could infer that Hammond's financial situation has actually improved since June 2001.[3] The trial court could have also questioned the Hammonds' credibility. For example, Hammond testified that she did not remember having a $16,000 ring that she had admitted having in 1999. She later testified that she sold a ring for $16,000 in 1999. Additionally, the testimony of Hammond and her husband regarding the ownership of the ranch was confusing. Hammond claimed that she did not know whether Charles had any ownership interest in the ranch. We must defer to the trial court on matters of credibility. Hammond's second issue is overruled.

## OPPORTUNITY TO PRESENT EVIDENCE

In her fourth issue, Hammond argues that she was denied the opportunity to present evidence regarding a change in her financial circumstances and her inability to pay the child support. She does not specify how she was denied this opportunity or what evidence was erroneously excluded. We have reviewed the record and have found no support for Hammond's assertion. At the August 14–15 hearing, Hammond was represented by counsel, who called her husband, Charles, to testify

on her behalf. We do note that the trial court excluded the only exhibit that Hammond's counsel sought to admit. This exhibit showed the child support payments that Hammond had made from July 2001 to June 2002 and the percentage of her net income that the payments represented. This exhibit would have done nothing to establish that Hammond was unable to pay the child support at the time of the hearing or during the period in which the arrearages occurred. Hammond had a different job at the time of the hearing than she had during the period covered by the exhibit. Moreover, with the exception of a few payments totaling less than $500, the finding of contempt was based on Hammond's failure to pay child support and tuition between June 2002 and August 2003.

At the August 28 hearing, Hammond, representing herself, requested to put some documents on the record "for appellate purposes." The trial court denied this request. There is nothing in the record to show that these documents related to any change of circumstances that had occurred since August 15. Furthermore, because Hammond expressly offered the documents only "for appellate purposes," it is not even clear that she intended the documents to be considered by the trial court.

In short, we conclude that the record does not support Hammond's claim that she was denied the opportunity to present evidence of a change in her financial circumstances or of her inability to pay. Hammond's fourth issue is overruled.

## HAMMOND'S REMAINING ARGUMENTS

In a supplemental brief, Hammond argues that the trial court failed to make a

---

**3.** Although Hammond stated at the August 28 hearing that she had lost her job because of the contempt finding, the trial court could have reasonably concluded that this change in circumstances was not material, as Hammond's job was already set to terminate in October 2003.

ruling on the record that Hammond had the ability to pay the child support and the attorneys' fees assessed against her. This argument is without merit. Hammond does not cite any authority that the trial court has to make an express finding of the contemnor's ability to pay. *See* TEX. FAM.CODE ANN. § 157.166 (Vernon 2002) (setting out the required contents of an enforcement order). In any event, the trial court did make such a finding. At the conclusion of the hearing on August 15, the trial court implicitly found that Hammond had the ability to pay when it stated, "I just didn't see anything that amounted to—that came up to a level of one of the defenses that you might have." The August 28 and November 8 orders both recite that Hammond has the ability to pay the child support. Attorneys' fees incurred in enforcing a child support order are part of the child support obligation and may be enforced by contempt. *See id.* § 157.167(c); *Ex parte Helms,* 152 Tex. 480, 486, 259 S.W.2d 184, 188 (1953); *In the Interest of Gonzalez,* 993 S.W.2d 147, 158 (Tex.App.-San Antonio 1999, no pet.). We overrule this issue.

We also overrule Hammond's third issue, which asserts that her confinement is illegal, unconstitutional, excessive, cruel and unusual, and an abuse of discretion. Hammond has not established any of these assertions.

### CONCLUSION

For the reasons stated herein, we remand Hammond to the custody of the El Paso County Sheriff to be held until: (1) she purges herself by paying the amounts set forth in the order signed on August 28, 2003 by the 171st Judicial District Court in cause number 89–6831, under the heading "Civil Contempt," or (2) until further order

of the 383rd Judicial District Court in cause number 89–6831.