Petition for Writ of Habeas Corpus Denied and Memorandum Opinion filed
May 23, 2008








Petition
for Writ of Habeas Corpus Denied and Memorandum Opinion filed May 23, 2008.  

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00346-CV

____________

 

IN RE JOSEPH MICHAEL RADMACHER, Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT OF HABEAS
CORPUS

 



 

M E M O R
A N D U M  O P I N I O N

On April
30, 2008, relator Joseph Michael Radmacher filed a petition for writ of habeas
corpus seeking release from jail.  See Tex. Gov=t Code Ann. ' 22.221(d) (Vernon 2004); Tex. R.
App. P. 52.  Relator contends that the contempt order issued against him is
void, and that he was not afforded due process of law.  Because relator has not
sustained his burden of demonstrating his entitlement to relief, we deny the
petition.

                                                               BACKGROUND








This
habeas corpus proceeding arises from a criminal contempt order that resulted in
the confinement of relator for five specific instances of failure to pay
court-ordered child support.  Both of his children are over the age of
eighteen; however, the 1995 support order provided for indefinite support of
relator=s older daughter, who was found to be
physically and/or mentally disabled and unable to provide for herself as an
adult.

On
January 24, 2008, the children=s mother (real party in interest, Rita Garrobo) moved to
enforce the support order through contempt and entry of judgment.  See
Tex. Fam. Code Ann. ' 157.001 (Vernon 2002).  She asserted that relator was in
arrears by at least $49,653.70, and had not paid court-ordered attorney fees. 
She identified five specific acts of non-compliance with the support order, and
requested thatBfor each such violationBrelator be held in contempt, and fined $500.00 and confined
in jail for up to six months.

Following
a hearing on March 25, the relator was found to be in arrears by $51,583.22. 
Garrobo was granted a judgment in that amount.  Relator was also ordered to pay
the outstanding attorney fees owed under the original support order, and
additional fees incurred in the enforcement of the support order.  Finally,
relator was found to be in criminal contempt of the support order, and was
ordered to serve five concurrent 180-day jail sentences for each specific
violation of the support order.

Relator
was placed into custody on March 25, 2008, and now asks that we issue a writ of
habeas corpus commanding his release.  He raises six contentions, which we
fairly summarize as follows:

1.         He was denied the right to a jury trial;

2.         He was committed to jail without a valid written order of
commitment;

3.         The respondent granted criminal contempt although Garrobo=s enforcement motion requested only civil contempt,
thereby depriving relator of notice;

4.         The trial court lacked jurisdiction to punish with contempt;

5.         The contempt order lacks sufficient specificity to inform
relator of the manner in which he violated the support order; and

6.         The contempt order is void because his nonpayment of
attorney fees is not punishable by contempt.








                                                       STANDARD
OF REVIEW

An
original habeas corpus proceeding constitutes a collateral attack on the
contempt order.  See Ex parte Dustman, 538 S.W.2d 409, 410 (Tex.
1976) (orig. proceeding).  The purpose of this proceeding is not to determine
the relator=s guilt or innocence but, rather, to determine whether he was afforded
due process of law, or the order of contempt is void.  See In re Broussard,
12 S.W.3d 827, 831 (Tex. App.BHouston [14th Dist.] 2003, orig. proceeding).  A release may
be ordered when the contempt order is void, either because it was beyond the
trial court=s power or because it deprived a contemnor of his liberty without due
process of law.  See Ex parte Barnett, 600 S.W.2d 252, 254 (Tex. 1980)
(orig. proceeding).  When collaterally attacked in a habeas corpus proceeding,
the contempt order is presumed valid unless the contemnor discharges his burden
showing otherwise.  See Ex parte Occhipenti, 796 S.W.2d 805, 808-09
(Tex. App.BHouston [1st Dist.] 1990, orig. proceeding).

                                                     RIGHT
TO A JURY TRIAL

Relator
argues first that he was charged with a Aserious offense,@ and was therefore entitled to a
trial by jury.  The right to a jury trial depends upon whether the offense can
be classified as Apetty@ or Aserious.@  See Ex parte Werblud, 536 S.W.2d 542, 546 (Tex.
1976) (orig. proceeding).  A sentence of as much as six months is a petty
offense, and may be imposed without a jury trial.  See id.  By contrast,
a serious charge that results in imprisonment of longer than six months is
constitutionally impermissible unless the contemnor is afforded the opportunity
of a jury trial.  Id. at 547.  Where the contemnor is sentenced to no
more than six months confinement for each of several acts, the punishment is
nonetheless serious if the sentences must be served consecutively so as to add
up to more than six months confinement.  In re Hammond, 155 S.W.3d 222,
226 (Tex. App.BEl Paso 2004, orig. proceeding).








Although
relator=s five 180-day sentences[1]
would exceed six months confinement if served consecutively, the trial court=s contempt order clearly specifies
that the periods of confinement Ashall run and be satisfied
concurrently.@  Relator=s confinement will not exceed 180 days.  See Taylor
v. Hayes, 418 U.S. 488, 495-96 (1974) (finding that eight
concurrently-running sentences, each of six months, was nonetheless petty
punishment), cited in In re Brown, 114 S.W.3d 7, 11 (Tex. App.BAmarillo 2003, orig. proceeding). 
Relator was therefore not charged with a serious offense.[2] 
See Werblud, 536 S.W.2d at 546.








Relator
argues, however, that In re Sproull requires a jury trial whenever
confinement Amay exceed six months.@  815 S.W.2d 250, 250 (Tex. 1991).  He suggests that, because
his possible punishment exceeded six months confinement, he was entitled
to a jury trial.  However, we do not read Sproull as a departure from
the Werblud standard that A[c]ases of criminal contempt, where
the sentence actually imposed does not exceed six months imprisonment,
are exempted from the requirements of a jury trial.@  Werblud, 536 S.W.2d at
547 (emphasis added).  Notably, the contemnor in Sproull was entitled to
a jury trial under Werblud, where the contempt order actually imposed
136 consecutive sentences of 60 days confinement,  totaling 8,160 days
confinement.  See Sproull, 815 S.W.2d at 250.  The Supreme Court was not
presented with a unique fact pattern in which the possible punishment
was serious, but the actual punishment petty.  Because this distinction
did not present itself therein, we decline to read one statement in Sproull
as an advisory opinion on a fact pattern not then before the Court.[3]


Moreover,
the Supreme Court=s original pronouncement in Werblud followed a
discussion of federal law in which the Court cited Taylor v. Hayes in
announcing that the Asentence actually imposed@ drives the jury-trial
determination.  Werblud, 536 S.W.2d at 547.  The possible punishment in Taylor
would have exceeded six months confinement but, because the sentences actually
imposed were ordered to run concurrently, the U.S. Supreme Court held that the
contemnor was not entitled to a trial by jury.  See Taylor, 418 U.S. at
495-96.  It is doubtful, then, that the Supreme Court intended to overrule Werblud
or disagree with Taylor on a fact pattern that was not at issue in Sproull.

We
therefore overrule relator=s first issue.

                                     SUFFICIENCY
OF COMMITMENT ORDER








Relator
argues in his second issue that the language of commitment in the contempt
judgment issued on March 26, 2008 is legally insufficient because it omits a
specific directive to a sheriff or other appropriate officer to take him into
custody.  See Ex parte Hernandez, 827 S.W.2d 858, 858 (Tex. 1992) (orig.
proceeding). 

Since Hernandez
was decided, the courts of appeals have disagreed about the specificity and
sufficiency of the Adirective@ language that must be in place in a valid commitment order. 
See In re Zapata, 129 S.W.3d 775, 778 (Tex. App.BWaco 2004, orig. proceeding)
(surveying Texas appellate court decisions interpreting Hernandez).  The
determining factor appears to be whether the commitment order actually directs
a sheriff or ministerial officer to take the person into custody.  See id.
at 780; Ex parte Ustick, 9 S.W.3d 922, 925 (Tex. App.BWaco 2000, orig. proceeding).

We need
not reach this issue of whether the commitment language in the March 26
contempt judgment[4] satisfies the
Hernandez requirement because, at the time that relator was
actually taken into custody on March 25, there was a separate valid written
commitment order that specifically instructed the Harris County Sheriff to Atake into his custody and commit to
the jail of Harris County, Texas, Joseph Radmacher to be confined in accordance
with the judgment of contempt of this Court or until [Radmacher] is otherwise
legally discharged.@

We
overrule relator=s second issue.

                                            CIVIL
AND CRIMINAL CONTEMPT








Relator
contends further that he was not given timely notice of the type of contempt
proceeding that had been brought by Garrobo.  Specifically, he claims that she
requested only civil coercive contempt, but that the respondent instead ordered
him incarcerated for criminal contempt.

Civil
contempt is intended to be remedial and coercive in nature.  Werblud,
536 S.W.2d at 545.  Imprisonment is conditional upon obedience and,
accordingly, the jailed contemnor may procure his release by complying with the
court=s order.  See id.  Criminal
contempt, by contrast, is punitive in nature.  Id.  A punishment for
criminal contempt is fixed and definite, and no act of voluntary compliance by
the contemnor will avoid the entire punishment affixed by the court.  See
id. at 546.  Because child support contempt proceedings are quasi-criminal
in nature, relator was entitled to procedural due process.  See in re Smith,
981 S.W.2d 909, 911 (Tex. App.BHouston [1st Dist.] 1998, orig. proceeding).  A denial of due
process occurs when the trial court grants a form of relief that was not
requested.  See id.

  Relator incorrectly
argues that Garrabo prayed for no more than civil coercive contempt.  Garrobo=s enforcement motion does request
civil coercive contempt, but elsewhere additionally requests unconditional
incarceration:

Movant
believes, based on the repeated past violations of the Court=s order by [Radmacher] that [he] will continue to fail
to comply with the order.  Movant requests that JOSEPH MICHAEL RADMACHER be
held in contempt, jailed for six months, and/or fined $500.00 for each failure
to comply with this Court=s order from the date of this filing to the date of
the haring on this Motion.

 

This is a request for
criminal contempt because, if granted, no act of compliance by relator could
effect his release.  Because the enforcement motion requested both civil
coercive and criminal contempt, relator=s due process rights were not
violated.  See Smith, 981 S.W.2d at 911.

We
overrule relator=s third issue.








                                        JURISDICTION
TO ORDER CONTEMPT

Relator
next argues that the trial court=s jurisdiction to impose contempt should
have expired two years after his youngest child turned eighteen.  Relator cites
Section 157.005 of the Family Code, which provides as follows:

(a) The
court retains jurisdiction to render a contempt order for failure to comply
with the child support order if the motion for enforcement is filed not later
than the second anniversary of the date:

(1) the
child becomes an adult; or

(2) on
which the child support obligation terminates under the order or by operation
of law.

 

Tex. Fam. Code Ann. ' 157.005(a) (Vernon Supp. 2007). 
Relator concedes that his child support obligations continued past his children=s eighteenth birthdays, on an
indefinite basis, because of the continuing needs of his disabled daughter.  See
id. ' 154.001(a)(4) (allowing a trial
court to order child support Afor an indefinite period@ if the child is disabled); ' 154.302 (identifying Adisability@ as the child=s need for substantial care and
personal supervision because of a physical or mental disability, and the child=s inability to provide self-support).

Relator
claims that a trial court=s contempt jurisdiction may not be extended indefinitely
simply because the support obligation does, citing In re Munks.  No.
01-07-00094-CV, 2007 WL 1844893 (Tex. App.BHouston [14th Dist.] June 28, 2007,
orig. proceeding) (mem. op.).  Relator=s reliance is misplaced.  Munks
holds that the trial court=s contempt jurisdiction may not be extended simply because
the respondent continues to make arrearage payments after the child=s eighteenth birthday:

A[T]o hold that
contempt jurisdiction might be extended by ordering a payment schedule, on accrued
arrearages, could result in contempt proceedings being brought at an almost
infinite period of time after the child had reached adulthood, an obvious
abrogation of the legislature=s intent.@








 

Id. at *4 (quoting In re Dickinson,
829 S.W.2d 919, 921 (Tex. App.BAmarillo 1992, orig. proceeding)) (emphasis added).  This
distinctionBthat one=s child support obligation may not be extended due to arrearagesBis an important one.  Section
157.005(a) limits contempt jurisdiction to a fixed period after the expiration
of the support obligation.  Because Munks=s support obligation terminated when
his child turned eighteen, see id. at *3, to allow the trial court to
exert jurisdiction simply because Munks had not paid all amounts owing before
the expiration of his obligation, would clearly abrogate the
legislature=s intent in limiting contempt jurisdiction.

By
contrast, relator=s child support obligation continued indefinitely, as is
authorized by statute, due to his child=s disability.  See Tex. Fam.
Code Ann. ' 154.001(a)(4).   Because his child support obligation continues, the trial
court retains jurisdiction to order criminal contempt.

Relator=s fourth issue is overruled.

                                           SPECIFICITY
AND ATTORNEY FEES

Relator=s last two issues complain that the
contempt order fails to identify the specific acts through which he violated
the child support order, and that he was improperly incarcerated for failing to
pay Garrobo=s attorney fees.  We disagree.  Although the enforcement order granted
judgment against relator for past arrearages and attorney fees, criminal
contempt was ordered only for five specific acts of non-compliance, which were
consistently described throughout the order as Aviolations.@  The contempt order satisfies Family
Code section 157.166(b), as it specifically lists the date of each occasion of
contemptible conduct, and expressly identifies that relator was adjudged Ain contempt for each separate violation.@  Although relator was ordered to pay
attorney fees, both as part of the 1995 support order and to reimburse Garrobo
for having to move for enforcement, relator was not held in contempt for the
failure to pay such fees.








Relator=s fifth and sixth issues are
overruled.

Accordingly,
we deny relator=s petition for writ of habeas corpus.

PER
CURIAM

Petition Denied and Memorandum Opinion filed May 23,
2008.

Panel consists of Justices Yates, Anderson, and Brown.









[1]           Relator
incorrectly claims that the contempt order incarcerated him for thirteen
violations of the support order.  However, this distinction is unimportant in
the resolution of this issue because, if ordered to run consecutively,
even five sentences of six-month confinement (instead of thirteen) would still
be Aserious punishment.@  See
Hammond, 155 S.W.3d at 226.





[2]           We
also note that the record does not contain a request for a jury trial.  Because
of our resolution of this issue, we need not decide whether relator would be
entitled to a jury trial notwithstanding his apparent failure to request one.





[3]           The
appellate courts in Waco and Eastland have interpreted Sproull as
holding that the possible punishment, not the sentence actually imposed,
determines the contemnor=s right to a trial by jury.  See Ex parte York,
899 S.W.2d 47, 49 (Tex. App.BWaco 1995,
orig. proceeding); In re Baker, 99 S.W.3d 230, 232 (Tex. App.BEastland 2003, orig. proceeding).  For the reasons
stated above, we respectfully disagree with this interpretation of Sproull. 
See also In re Bourg, No. 01-07-00623-CV, 2007 WL 2446844, at *3 (Tex.
App.BHouston [1st Dist.] 2007, orig. proceeding) (mem. op.)
(finding no right to a jury trial where the trial court actually imposed five
180-day concurrent sentences); Hammond, 155 S.W.3d at 226 (examining the
length of confinement and whether the sentences are to be served
concurrently or consecutively); Ex parte Casillas, 25 S.W.3d 296, 299
(Tex. App.BSan Antonio 2000, orig. proceeding) (looking at the Apunishment assessed,@ and what was Aimposed@); In
re Levingson, 996 S.W.2d 936, 938 (Tex. App.BHouston [14th Dist.] 1999, orig. proceeding) (granting habeas relief
because the contemnor was sentenced to jail for a period of almost nine
months@); In re Brown, 114 S.W.3d 7, 12 (Tex. App.BTyler 2003, orig. proceeding) (AWerblud
states clearly the applicable dividing line between petty and serious contempt
... the punishment imposed determines whether the contempt is petty or
serious, not the punishment possible.@).





[4]           The commitment order contained in the March 26, 2008
contempt judgment provides as follows:

 

IT IS THEREFORE ORDERED that [Radmacher] is committed
to the county jail of Harris County, Texas, for a period of 180 days for each
separate violation enumerated above.